### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Darcel Keyes, | Case No.: 2:17-cv-11492 (GAD/SDD) |
| | Hon. Gershwin A. Drain |
| Plaintiff, | |
| | |
| v. | **PLAINTIFF'S MOTION FOR** |
| | **PARTIAL SUMMARY** |
| Ocwen Loan Servicing, LLC, | **JUDGMENT** |
| | |
| Defendant. | |

 

**NOW COMES THE PLAINTIFF**, by and through her attorneys, and pursuant to Fed. R. Civ. P. 56, moves this Court for an Order granting partial summary judgment and the requested relief with respect to Counts I-IV of the Second Amended Complaint in this matter for the reasons stated in the attached brief.

Respectfully submitted,

Date: <u>May 30, 2018</u>          By:<u>/s/ Anthony Chester</u>
                                        Anthony P. Chester (P77933)
                                        **HYDE & SWIGART**
                                        120 South 6th Street, Suite 2050
                                        Minneapolis, MN 55402
                                        Telephone:  (952) 225-5333
                                        Email: <u>tony@westcoastlitigation.com</u>

                                        *Attorneys for Darcel Keyes*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Darcel Keyes,

        Plaintiff,

v.

Ocwen Loan Servicing, LLC,

        Defendant.

Case No.: 2:17-cv-11492 (GAD/SDD)
Hon. Gershwin A. Drain

**PLAINTIFF'S BRIEF IN
SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1. Whether Plaintiff is entitled to partial summary judgment on her Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., claims as to liability against Defendant?

> Plaintiff's Answer: "Yes"

> Defendant's Answer: "No"

1. Whether Plaintiff is entitled to partial summary judgment on her Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., claims as to willfulness and statutory damages of $1,500.00 under the TCPA?

> Plaintiff's Answer: "Yes"

> Defendant's Answer: "No"

2. Whether Plaintiff is entitled to partial summary judgment as to liability on her Michigan Regulation of Collection Practices Act, MCL § 445.252(1)(g), claims against Defendant?

> Plaintiff's Answer: "Yes"

> Defendant's Answer: "No"

## MOST APPROPRIATE AUTHORITIES

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,

18 FCC Rcd. 14,014 (2003)

(Finding a predictive dialer is an ATDS under the TCPA).

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

23 FCC Rcd. 559 (2008)

(Reaffirming that a predictive dialer is an ATDS under the TCPA).

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 15391 (2012)

(Reaffirming that a predictive dialer is an ATDS under the TCPA).

*Reyes v. BCA Fin. Servs., Inc.*,

No. 16-24077-CIV, 2018 WL 2220417 (S.D. Fla. May 14, 2018)

(Finding a predictive dialer is an ATDS under the TCPA).

*Keyes v. Ocwen Loan Servicing, LLC*,

No. 17-CV-11492, 2017 WL 4918530 (E.D. Mich. 2017)

(Finding a plaintiff may orally revoke consent to be called).

*Keyes v. Ocwen Loan Servicing, LLC*,

No. 17-CV-11492, 2018 WL 1315804 (E.D. Mich. Mar. 14, 2018)

(Finding Ocwen is a regulated person under the MCPA).

## I.    INTRODUCTION

Defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant") is Plaintiff Darcel Keyes's ("Keyes" or "Plaintiff") mortgage servicer for two loans she has on her home. Among other things, Defendant collects payments from Plaintiff on her two mortgage loans. To collect payments, Defendant called Plaintiff on her cellular telephone thousands of times using an automatic telephone dialing system, the Aspect Unified IP ("Aspect") dialer.  From May 2013 to December 2016, Defendant placed *at least* 2,781 automated, outbound calls to Plaintiff's cell phone using the Aspect dialer.  The 2,781 calls made to Plaintiff were an abusive attempt to collect a debt and constituted repeated and continuous calls with the intent to harass Plaintiff.

Plaintiff asserts that she revoked consent to be called numerous times with many of those revocations being recorded by Defendant. Plaintiff revoked consent on December 28, 2014 by stating, "Don't call me no more. You see I've been paying y'all all year long.  Don't call me no more." Plaintiff also unequivocally revoked consent to be called on March 22, 2016, March 23, 2016, March 24, 2016, March 29, 2016, March 30, 2016, March 31, 2016, and April 4, 2016, demanding that Defendant, among other things, "Quit calling!" However, Defendant told Plaintiff calls would continue. And the calls did indeed continue, hundreds of times thereafter.

Defendant's systematic, oppressive, and harassing conduct forms the foundation for Plaintiff's claims against Defendant under the Telephone Consumer Protection Act and Michigan Collection Practices Act.

## II.   PROCEDURAL HISTORY AND MOTION POSTURE

Plaintiff initiated an action against Defendant and Ocwen Mortgage Servicing, Inc. on or about May 10, 2017. [Dkt. No. 1]. On or about July 15, 2018 Plaintiff filed an Amended Complaint against Defendant alone asserting claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; the common law negligence doctrine of Michigan law; and the Michigan Occupational Code, Michigan Compiled Laws ("MOC") § 339.900.  [Dtk. No. 17].  This Court dismissed Plaintiff's negligence claim and MOC claim in a decision on a motion to dismiss on or about October 31, 2017 but found Plaintiff had stated a claim under the TCPA for calls received by Plaintiff from May 11, 2013 to present. [Dkt. No. 25].

On or about November 7, 2017, Plaintiff filed a Second Amended Complaint alleging claims under the Michigan Collection Practices Act ("MCPA"), MCL § 445.251 *et seq.*, in addition to her claims under the TCPA [Dkt. No. 29]. Defendant moved to dismiss Counts III and IV (MCPA claims) of Plaintiff's Complaint. [Dkt. No. 31]. On or about March 14, 2018, this Court denied Defendant's Motion to Dismiss Counts III and IV and found that Plaintiff stated a claim under the MCPA because Defendant was a "regulated person" under the MCPA.  [Dkt. No. 39].

Presently before the Court is Plaintiff's motion for partial summary judgment. The undisputed facts show that Defendant placed 2,781 automated, outbound calls to Plaintiff's cellular telephone. PSMF ¶ 12. The undisputed facts also show that Defendant placed at least 581 automated, outbound calls to Plaintiff's cellular

telephone after she revoked consent to be called. PSMF ¶ 28-42. Plaintiff seeks summary judgment as to liability under the TCPA for 581 calls made by Defendant to Plaintiff under Count I and Count II.  Plaintiff also seeks statutory damages under the TCPA for 581 calls made by Defendant to Plaintiff. Under Count I, statutory damages are $500.00 per call for negligent violations of the TCPA and Plaintiff requests statutory damages of $500.00 per call. [Dtk. No. 29, pg. 14]; 47 U.S.C. § 227(b)(3)(B). If the Court determines the violation is willful, as a matter of law, Plaintiff is entitled to damages up to $1,500.00 per call and requests statutory damages of $1,500.00 per call. [Dtk. No. 29, pg. 15]; 47 U.S.C. § 227(b)(3)(B); 47 U.S.C. § 227(b)(3)(C).

Beyond the 581 calls that violate the TCPA as a matter of law, Plaintiff believes issues of material fact exist as to Plaintiff's claims under Count I and Count II for the remaining 2,200 of the total 2,781 calls made by Defendant and reserves the question of liability for trial. PSMF ¶ 12. For the additional 2,200 calls, Plaintiff revoked consent to be called numerous times over the years and Defendant continued to call Plaintiff. Keyes Decl. ¶¶ 20-21. Defendant will likely dispute that Plaintiff revoked consent to be called and will attempt to prove it had Plaintiff's consent to call her. However, Plaintiff asserts that she revoked consent beginning over ten years ago and repeatedly revoked consent thereafter. Keyes Decl. ¶¶ 20-21. These issues remain for trial.

Plaintiff also seeks summary judgment under the MCPA for Count III and Count IV as to liability. *See* [Dtk. No. 29, pg. 15].  Plaintiff reserves the question of damages (statutory or actual) for the fact finder at trial. Mich. Comp. Laws § 445.257.

## III.   STATEMENT OF THE FACTS

Plaintiff, a natural person, has had two mortgages on her personal residence in Pontiac, Michigan.  PSMF ¶¶ 1, 2, 4.[1]  At all times relevant in this action, Defendant was Plaintiff's mortgage servicer for the two loans on her home. PSMF ¶ 6. The mortgage loans on her home were for personal, family, and household purposes and Defendant collected Plaintiff's payment on the loans. PSMF ¶¶ 5, 8.

Pursuant to the TCPA, Plaintiff must show that (1) Defendant called Plaintiff's cell phone (2) using an Automatic Telephone Dialing System ("ATDS") or pre-recorded message (3) without Plaintiff's prior express consent. This case is about Defendant's continuous, repetitive, and harassing attempts to collect a debt from Plaintiff by calling her cellular telephone number 248-895-9378. PSMF ¶¶ 3, 9, 10, 12. Defendant used a dialer to call Plaintiff called Aspect Unified IP ("Aspect"). PSMF ¶ 9. Aspect is an ATDS. PSMF ¶¶ 23, 24, 27. From May 2013 to December 2016, Defendant called Plaintiff approximately 2,781 times using the Aspect auto dialer on her cellular telephone. PSMF ¶¶ 3, 8, 9, 10, 12, 24. The calls received by Plaintiff were harassing and inconvenient to Plaintiff. PSMF ¶¶ 43, 44.

### A.   DEFENDANT CALLED PLAINTIFF USING AN ATDS

Defendant's dialer, Aspect, is a predictive dialer that:

(1)     has the capacity to store telephone numbers (PSMF ¶ 13);

(2)     is capable of dialing a list of telephone numbers from a database loaded

---

[1] Plaintiff's Statement of Material Facts Not in Dispute (Exhibit 1), will be referred to as "PSMF".

into Aspect (PSMF ¶ 14);

(3)    automatically dials a list of telephone numbers as defined within a database of telephone numbers loaded into it (PSMF ¶ 15);

(4)    has the capacity to call telephone numbers and playing a pre-recorded message (PSMF ¶ 16);

(5)    calls a list or database of telephone numbers without a human actually manually dialing the ten-digit telephone number that it calls (PSMF ¶ 17);

(6)    calls a list of telephone numbers without human intervention (PSMF ¶ 18);

(7)    automatically, makes multiple, simultaneous telephone calls and connects to a live agent if the called party answers the telephone call (PSMF ¶ 20);

(8)    predicts how far in advance to make calls in an attempt to prevent time wasted in listening to rings, answering machines, disconnected telephone numbers and calls that are not answered (PSMF ¶ 21);

(9)    predicts when agents will be available to take calls (PSMF ¶ 22); and

(10)   runs on a system that is capable of generating random or sequential telephone (PSMF ¶¶ 25, 26).

Each of the enumerated items above constitutes elements of a predictive dialer. Therefore, under the TCPA, Defendant's auto dialer, Aspect, is a predictive dialer, a type of ATDS. PSMF ¶¶ 23, 24.  Aspect is also an ATDS because it has the capacity to generate random or sequential telephone numbers. PSMF ¶¶ 24-27.

### B.     PLAINTIFF REVOKED CONSENT TO BE CALLED BY DEFENDANT

As Defendant readily admits, Plaintiff revoked consent to be called on numerous occasions, but Defendant continued to call Plaintiff using the Aspect auto dialer. PSMF ¶¶ 28-42. Particularly, on December 28, 2014, on a recording produced by Defendant, Plaintiff revoked consent to be called. PSMF ¶¶ 28. Thereafter, Defendant did not have Plaintiff's prior express consent to call Plaintiff's cellular telephone using an ATDS. PSMF ¶¶ 28-29, 42. After Plaintiff revoked consent to be called on December 28, 2014, Defendant placed 46 calls from Aspect to Plaintiff up until January 13, 2014 when Defendant asked Plaintiff to allow Defendant to call her with an ATDS. PSMF ¶ 29.

Due to the overwhelming number of calls, Plaintiff again revoked consent for Defendant to place calls to her cell phone using an ATDS. PSMF ¶¶ 30-42. Specifically, Plaintiff revoked consent to be called on March 22, 2016, March 23, 2016, March 24, 2016, March 29, 2016, March 30, 2016, March 31, 2016, and April 4, 2016. PSMF ¶¶ 30-42.  However, after March 22, 2016 at 9:15 AM and up until December 12, 2016, Defendant used the auto dialer Aspect to place automated, outbound calls to Plaintiff 535 times. PSMF ¶¶ 30-42. In total, from December 28, 2014 through January 13, 2015 and March 22, 2016 through December 12, 2016, Defendant used its ATDS, Aspect, to place automated, outbound calls to Plaintiff 581 times after Plaintiff revoked consent to be called. PSMF ¶¶ 28-42. Defendant refused to honor Plaintiff's oral requests to stop being called and continued to harass her with hundreds of subsequent calls to her cellular telephone number. PSMF ¶¶ 28-42. In

fact, Defendant had a long-standing policy to not honor a consumer's oral revocations of consent to be called until it changed that policy in September, 2016. PSMF ¶ 45. Thus, no matter what Plaintiff said to Defendant, she would continue to get automated, outbound calls from Defendant's auto dialer, Aspect. PSMF ¶ 42.

## IV.   ARGUMENT

### A.   LEGAL STANDARD

Under Fed. R. of Civ. Pro. 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Smith v. Heyns*, 2013 U.S. Dist. LEXIS 108130, *18-19 (E.D. Mich. 2013). "an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004); *Smith v. Heyns*, 2013 U.S. Dist. LEXIS at *19. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52.

In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movants as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party has the burden to show that the non-moving party has failed to establish an essential element of its case upon which the non-moving party would bear the ultimate

burden of proof at trial. *Klein v. United States*, 94 F. Supp. 2d 838, 842 (E.D. Mich. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets its burden, "the non-moving party must show that there is sufficient evidence for a jury to return a verdict in its favor" and "must present affirmative evidence on critical issues." *Klein*, 94 F. Supp. 2d at 843.

## B.  DEFENDANT VIOLATED THE TCPA

In 1991, Congress enacted the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits non-consensual calls to a person on his or her cellular telephone using an autodialer or an artificial or prerecoreded voice. 47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). "Thus, to establish a prima facie case under § 227(b)(1)(A), a plaintiff must show that: '(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient.'" *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012) (*quoting Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 at *7 (E.D. Mich. June 29, 2010)). "The burden of establishing prior consent is on the defendant." *Id.* at 898.

### i.  *Defendant Called Plaintiff's Cellular Telephone*

The first element to a TCPA claim is that "a call was placed to a cell or wireless phone." *Harris*, 867 F. Supp. 2d at 892. It is undisputed that Defendant called

Plaintiff's cellular telephone number 2,781 times between May 10, 2013 and December 12, 2016. PSMF ¶¶ 3, 9, 10, 12. The first element is satisfied, as Defendant's call records show calls to Plaintiff's cellular telephone number and Defendant admits that it called Plaintiff's cellular number 2,781 times. PSMF ¶¶ 3, 12.[2]

### ii.    *Defendant Called Plaintiff Using an ATDS*

#### a.    *A predictive dialer is an ATDS*

An "automatic telephone dialing system" is defined as "equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A-B). In 2003, the FCC issued an order stating in part, "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,093 (2003) ("2003 FCC Order"). The 2003 FCC Order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *Id*. at 14143 n. 31.

In the 2003 FCC Order, the FCC found that although "[i]n the past, telemarketers may have used dialing equipment to create and dial 10–digit

---

[2] Exhibit 3, Kearse Dep. Tr., pg. 206, ln. 12-17  ("Q: The calls she received were from the Aspect dialing system, correct? A: Yes, she did receive calls from representatives using the dialing system."); Exhibit 4, Aspect Call Logs.

telephone numbers arbitrarily," since then "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." 18 FCC Rcd. at 14092. However, "[t]he basic function of such equipment . . . has not changed—the capacity to dial numbers without human intervention." *Id*.   In so holding, the FCC determined that "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result." *Id*. at 14092.

In 2008, the FCC issues another declaratory judgment that "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008) ("2008 FCC Order"). And again in 2012, the FCC reaffirmed one more that the TCPA definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012) ("2012 FCC Order").

Whether or not a predictive dialer is an ATDS within the scope of the TCPA has been well established through three separate FCC Orders over the course of a decade.

Plainly, a predictive dialer is an ATDS.[3] Additionally, the 2003 FCC Order, 2008 FCC Order, and 2012 FCC Order cannot be invalidated. The Hobbs Act and the Federal Communications Act work in tandem to confine the jurisdiction of federal courts over efforts to invalidate certain actions by the FCC. *Leyse v. Clear Channel Broad., Inc.*, 545 Fed. Appx. 444, 446 (6th Cir. 2013). It is well settled that district courts are barred under the Hobbs Act from following non-binding authority setting aside FCC Orders.[4] The Hobbs Act provides courts of appeal with exclusive and time-limited jurisdiction over actions "made reviewable by section 402(a) of title 47," 28 U.S.C. § 2342(1), and that section makes reviewable "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter[.]" 47 U.S.C. § 402(a); *Leyse*, 545 Fed. Appx. at 454; *Leckler v. Cashcall, Inc.*, 2008 U.S. Dist. LEXIS 97439, *6 (N.D. Cal. 2008).

The Hobbs Act provides a mechanism for judicial review of certain administrative orders, including "all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1); *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC,* 2018 U.S. App. LEXIS 4380, *7 (4th Cir. 2018). A party aggrieved by such an order may challenge it by filing a petition in the

---

[3] "The FCC further defined 'automatic telephone dialing system' to include predictive dialers . . . [A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." 2003 Order, 18 FCC Rcd. 14014, 14091-93; *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012).

[4] Regardless of how the claim is brought before the court, the practical effect . . . here would be to "set aside, annul, or suspend" the 2008 FCC Ruling. I am without jurisdiction to effectuate that outcome. I therefore join with those courts that have found that the 2008 FCC Ruling is binding on the district courts and not subject to review except by the federal courts of appeals. *Chavez v. Advantage Group*, 959 F. Supp. 2d 1279, 1282 (D.Colo. 2013).

11

court of appeals for the judicial circuit where the petitioner resides or has its principal office, or in the Court of Appeals for the D.C. Circuit. 28 U.S.C. § 2343; *Carlton & Harris Chiropractic, Inc.*, 2018 U.S. App. LEXIS 4380, *7; *see US West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000). An agency order, for purposes of the Hobbs Act, is a "final order" if it "imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process." *US West*, 224 F.3d at 1055; *Leckler*, 2008 U.S. Dist. LEXIS 97439.

In 2015, the FCC issued another declaratory ruling that again touched on predictive dialers. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 FCC Order"). The 2015 FCC Order led to the decision *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018). While the D.C. Circuit addresses predictive dialers in *ACA Int'l*, the 2003 FCC Order, 2008 FCC Order, and 2012 FCC Order remain in full force and effect, as they were not timely challenged. *See Carlton & Harris Chiropractic, Inc.*, 2018 U.S. App. LEXIS 4380 ("we hold that the jurisdictional command of the Hobbs Act requires a district court to apply FCC interpretations of the TCPA."). As such, courts outside the D.C. Circuit are not bound by an out-of-circuit decision in a Hobbs Act case, such as the recent *ACA Int'l* ruling, because there is no rule of "intercircuit *stare decisis*." *See Brizendine v. Cotter & Co.*, 4 F.3d 457, 462 n. 4 (7th Cir. 1993).

The recent opinion in *Reyes v. BCA Fin. Servs., Inc.* is particularly instructive on why a predictive dialer is still an ATDS under the TCPA. No. 16-24077-CIV, 2018

WL 2220417 (S.D. Fla. May 14, 2018).  In *Reyes*, the defendant was sued for calls it placed to the plaintiff using a predictive dialer in an attempt to collect a debt. *Id.* at *1. The *Reyes* court recognized that the 2003 FCC Order established that predictive dialers are an ATDS under the TCPA and the 2008 FCC Order and 2012 FCC Order reaffirm that definition. *Id.* at *5-6.  The court addressed the impact of the *ACA Int'l* opinion on the landscape of TCPA litigation related to predictive dialers and found that the 2003 FCC Order, 2008 FCC Order, and 2012 FCC Order all remain binding and in effect, as (1) the time to appeal those orders had passed, and (2) the *ACA Int'l* opinion did not remove predictive dialers that have the present capacity to be predictive dialers from the definition of an ATDS under the TCPA. *Id.* at 11.

The 2003 FCC Order, 2008 FCC Order, and 2012 FCC Order remain in effect until the Sixth Circuit rules on an appeal pursuant to the Hobbs Act brought by a petitioner who resides within this jurisdiction.  As such, predictive dialers remain within the scope of the TCPA.

### b.      *Aspect is a Predictive Dialer*

Here, Aspect is a predictive dialer. It has all the trademark signs of a predictive dialer.  First, it has the capacity to store telephone numbers and dial telephone numbers from a database automatically. PSMF ¶ 13-15. Defendant's policy and procedure manual addresses the reality that Aspect must have telephone numbers *loaded into it* in

order to dial those numbers. PSMF ¶ 13-14 (emphasis added).[5] Defendant corporate representative also testified that Aspect makes calls for Defendant's collection agents automatically. PSMF 15.[6] Additionally, as noted by Plaintiff's expert, Jeffrey Hansen, "[t]he Aspect UIP predictive dialer is capable of dialing a list of numbers loaded into a "campaign" or "pool" on the dialer." PSMF ¶ 13.5.

Second, the Aspect auto dialer calls a list or database of telephone numbers without a human actually manually dialing the ten-digit telephone number that Aspect calls. PSMF ¶¶ 17-18. Again, Defendant's manual indicates that Aspect queues up a campaign for dialing once the data is loaded into the machine. PSMF ¶ 18. And again, as Defendant's corporate representative admits, Aspect makes calls for collection agents without Defendant's collection agents having to click other buttons aside from a button indicating that the representative is ready to receive a call placed by Aspect.



PSMF ¶ 17.[7] Once more, expert Hansen provides insight on Aspect and notes that it is "capable of automatically and without human intervention calling numbers that are stored as a list, which itself is stores in a table of a database." PSMF ¶ 17.3.

Third, Aspect automatically makes multiple, simultaneous telephone calls according to an algorithm that predicts when agents will be available so it can prevent time wasted in listening to rings, answering machines, or calls that are not answered. PSMF ¶¶ 19-22. Defendant's manual is instructive here again, as it acknowledges ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ PSMF ¶ 20.1. Defendant's manual further notes that ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ PSMF ¶ 20.3. Thus, the automated, outbound calls made to Defendant's customers are made in "Predictive Dial Mode." *See* PSMF ¶ 10, 12. Expert Hansen breaks down what it means for Aspect to make predictive dialed calls and explains that "the Aspect UIP predictive dialer will call using multiple telephone lines per agent, and it will use all available telephone lines when making agent-less calls." PSMF ¶ 22.2.

---

[7] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

Here, there can be no dispute that Aspect is a predictive dialer. It (1) has the capacity to store and produce numbers, (2) calls a list or database of numbers without human intervention, (3) automatically makes multiple, simultaneous telephone calls using an algorithm to predict when agents will be available. PSMF ¶¶ 13-15, 17-22. This type of capacity by a dialing machine is precisely what the 2003 FCC Order sought to address and hold accountable under the TCPA. 18 FCC Rcd. 14014, 14091-93. Defendant cannot dispute that the Aspect is a predictive dialer, and an ATDS, as the FCC has defined it.

c.   <u>Aspect has the capacity to dial random or sequential numbers</u>

In addition to being a predictive dialer, Aspect also fits the plain statutory definition of an ATDS. Importantly, the Aspect auto dialer runs on Linux and Windows operating systems. PSMF ¶ 25.1. Such computer systems are capable of generating random or sequential telephone numbers. PSMF ¶ 26.1. Aspect cannot work without the underlying operating systems of Linus and Windows, therefore such operating systems are a part of the actual system that Aspect is in its entirety. PSMF ¶ 26.3. Expert Hansen explains this using an automobile analogy. As Hansen puts it:

> To illustrate, no single component of an automobile is capable of transporting someone from point A to point B, but instead many components are combined to create a single system. The automobile needs a chassis, akin to the operating system of a dialer. The automobile also needs an engine, akin to the dialing software. Typically, software is not created to perform a task that is handled by the operating system in which the software is installed on, such as the generation of phone numbers discussed earlier in my report. To do so would be redundant, as would be having two radios in the automobile. In the case of the Aspect UIP predictive dialer, the Aspect UIP Telephony Adapter runs on Linux, Aspect ALM runs on Linux and the Aspect UIP software runs on Microsoft Windows. PSMF ¶ 26.3.

Since the whole system that Aspect relies upon to operate as a dialing machine has the capacity to generate random or sequential numbers, it fits within the plain text statutory definition of an ATDS. 47 U.S.C. § 227(a)(1)(A). Be it a predictive dialer or a random or sequential number generator, Aspect is in all parts an ATDS.

### iii.    *Defendant Called Plaintiff After Plaintiff Revoked Consent*

#### a.    <u>A person may orally revoke consent to be called</u>

While the TCPA and Sixth Circuit are silent on revocation, this Court has held that prior express consent under the TCPA is revocable via an oral statement on the phone. *Keyes v. Ocwen Loan Servicing, LLC*, No. 17-CV-11492, 2017 WL 4918530, *5 (E.D. Mich. 2017) ("The Court will conclude that persuasive authority indicates revocation is authorized by the TCPA and that Keyes has plausibly alleged revocation"); *Gold v. Ocwen Loan Servicing, LLC*, No. 17-CV-11490, 2017 WL 6342575, at *2 (E.D. Mich. 2017) ("And a plaintiff does not need to allege specific dates and times of when he orally revoked consent. Rather, Plaintiff's allegation that he told Defendant's agent to stop calling on multiple occasions is plausible and sufficiently specific—especially when Defendant allegedly called over a thousand times in the span of several years."); *Currier v. PDL Recovery Grp., LLC*, No. 14-12179, 2017 WL 712887, at *9 (E.D. Mich. Feb. 23, 2017) (finding oral revocation sufficient).

In *ACA Int'l*, the D.C. Circuit addressed the issue of revocation of consent and stated that "[i]t is undisputed that consumers who have consented to receiving calls

otherwise forbidden by the TCPA are entitled to revoke their consent." 885 F.3d at 709; *see* 30 FCC Rcd. 7691, 7996 ¶ 62. The court upheld the 2015 FCC Order Declaratory Ruling providing that "a called party may revoke consent at any time and through any reasonable means"–orally or in writing–"that clearly expresses a desire not to receive further messages." *ACA Int'l*, 885 F.3d at 709-10.

> ### b. *Plaintiff unequivocally revoked her consent on December 28, 2014*

In a recording from December 28, 2014 at 5:40 PM produced by Defendant, Plaintiff clearly and unambiguously tells Defendant to stop calling her. PSMF ¶ 28. Specifically, Plaintiff tells Defendant's representative: "Don't call me no more. You see I've been paying y'all all year long. Don't call me no more." PSMF ¶ 28. Defendant's corporate representative admits that Plaintiff asked to stop being called but that Defendant continued to call Plaintiff thereafter. PSMF ¶¶ 29, 42.[8] This was likely due to Defendant's policy to violate the law and not honor oral revocation. PSMF ¶ 45.[9]



For every call made by the Aspect auto dialer after Plaintiff's December 28, 2014 call with Defendant where Plaintiff revoked consent to be called, Defendant willfully violated the TCPA. *See Harris*, 867 F. Supp. 2d at 892. According to Defendant's call records from December 28, 2014 through January 13, 2015, Defendant called Plaintiff's cellular telephone number 46 times without Plaintiff providing prior express consent to be called after the December 28, 2014 call with Defendant. PSMF ¶ 29.  Liability is clear within this time frame.

c.   <u>*Plaintiff again unequivocally revoked her consent on March 22, 2016 and repeatedly thereafter*</u>

In a recording from March 22, 2016 at 9:15 AM, Plaintiff clearly and unambiguously tells Defendant to quit calling her. PSMF ¶ 30. Specifically, Plaintiff shouts at Defendant's representative: "Quit calling me!" PSMF ¶ 30. However, Defendant not only doesn't stop calling Plaintiff, but it actually calls her two more times that same day. *See* PSFM ¶ 30.3.

The next day, on March 23, 2016, Defendant calls Plaintiff four times until she answers a call at 2:56 PM and states in a recoding of that call "Quit calling me every five damn minutes." PSMF ¶ 31; PSMF ¶¶ 31.3. In response, Defendant's representative stated, until trailing off: "Uh, the calls will continue ma'am if you do not, uh…" to which Plaintiff responded: "This is harassment!" PSMF ¶ 31. Plaintiff finished the call with the statement: "Quit calling. . ." PSMF ¶ 31. However, again, despite Plaintiff's demand for Defendant to stop calling her,

19

Defendant calls back again later that day on March 23, 2016 three more times until Plaintiff picks up and states in a recording "Quit calling me!" PSMF ¶¶ 32; 32.3.

Defendant continues to call Plaintiff numerous times between March 24, 2016 and March 31, 2016. PSMF ¶¶ 33-37; 33.3. In recordings from March 24, 2016, March 29, 2016, March 30, 2016, and March 31, 2016, Plaintiff repeatedly asks why she is still receiving phone calls from Defendant and expresses to Defendant that she is "sick of getting these calls!" PSMF ¶¶ 33-37. Despite these pleas, Defendant simply responds by stating: "Unfortunately, we still will be calling you." PSMF ¶ 36. Defendant knew Plaintiff did not want to receive telephone calls from Defendant, but it told her that Defendant would call her anyway.

On April 4, 2016 at 6:20 PM, Plaintiff and Defendant speak again on a recorded call. PSMF ¶ 38. Plaintiff tells Defendant's representative to "quit calling" numerous times on that recording. PSMF ¶ 38.  Yet, after the April 4, 2016 call and all the calls before it from March 22, 2016 forward, Defendant continued to call Plaintiff on a daily basis, with multiple calls a day.  PSMF ¶ 38.3.  All told, after the call on March 22, 2016 though December 12, 2016, Defendant called Plaintiff's cellular telephone number five-hundred, thirty-five times (535) without Plaintiff providing any prior express consent to be called. PSMF ¶ 41. As noted above, Defendant's corporate representative admits that Plaintiff asked to stop being called but that Defendant continued to call Plaintiff thereafter.  PSMF ¶¶ 29, 42. Liability is clear as to the 535 calls Plaintiff received after March 22, 2016 at 9:15 AM.

d.   *Defendant's calls to Plaintiff after she revoked consent to be called constitute a willful violation of the TCPA*

If a consumer gives her consent, she may may subsequently revoke her consent for a party to call her. *Keyes*, 2017 WL 4918530, *5. For the purposes of a negligent violation of the TCPA, "'[t]he TCPA is essentially a strict liability statute' that 'does not require any intent for liability[.]'" *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 134 (E.D.N.Y. 2015) (*quoting Echevvaria v. Diversified Consultants, Inc.*, No. 13 CIV. 4980(LAK)(AJP), 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014)); *Accord Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, No. 1:09 CV 1162, 2013 WL 3654550, at *2 (W.D. Mich. July 12, 2013). For willful violations, if "[a] defendant willfully or knowingly violate[s] this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(a)(3). This Court has found that calling a party after the party requested that calls cease constitutes a willful violation of the TCPA. *Keyes*, 2017 WL 4918530, at *6 ("Willfulness requires allegations that [d]efendants knew that they acted in a manner that violated the statute"); *Harris*, 867 F. Supp. 2d at 895-6 (finding once a defendant is on notice of Plaintiff's revocation to be called, it constitutes a willful violation of the TCPA for calls thereafter). Therefore, once a party revokes consent to be called, intent for a willful violation may be found by the Court and the court has discretion to award up to $1,500.00 per call as statutory damages.

21

Here, given Plaintiff's repeated requests to stop being called, Defendant's audacity to tell Plaintiff that calls would continue despite her request, and the massive volume at which Defendant continued to call Plaintiff, finding a willful violation of the TCPA is warranted. PSMF ¶¶ 28-38, 41. If there is any concern, Defendant's brazen policy to not honor a customer's oral requests to stop being called should push the Court to find that Defendant's violations of the TCPA were willful. PSMF ¶ 45. As such, Plaintiff believes an award of $1,500 per call for all 581 calls made by Defendant to Plaintiff after Plaintiff revoked consent to be called is just, fair, and necessary.

### C.   DEFENDANT VIOLATED THE MCPA

The MCPA requires Plaintiff to show that (1) Defendant is a "regulated person" (2) who attempted to collect a debt (3) from a debtor (4) in a manner prohibited by the MCPA. Mich. Comp. Laws §§ 445.251-445.252; *see Carpenter v. Monroe Fin. Recovery Grp., LLC*, 119 F. Supp. 3d 623, 630 (E.D. Mich. 2015).

#### i.   *Plaintiff is a "Debtor" and Defendant Attempted to Collect a "Debt"*

The MCPA, like its federal counterpart, the Fair Debt Collection Practices Act ("FDCPA"), prohibits abusive collection efforts with respect to debts arising out of an "express or implied agreement or contract for a purchase made primarily for personal, family, or household purposes." M.C.L. § 445.251(a); *see* 15 U.S.C. § 1692a(5); *Hadad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012); *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005).

Here, the underlying debt involved two mortgages incurred by Plaintiff involving her personal residence. PSMF ¶¶ 4-6. Defendant then attempted to collect on these mortgage debts, which are express agreements or contracts incurred by Plaintiff primarily to purchase her personal residential household. PSMF ¶¶ 6, 8.   As such, Plaintiff is a "debtor" because she is "an individual who is obligated or allegedly obligated to pay a debt." *See* Mich. Comp. Laws. § 445.251(d). Therefore, Plaintiff has clearly satisfied the MCPA's requirement that Plaintiff be a "debtor" and that the underlying debt be incurred "primarily for personal, family, or household purposes."

## ii.   *Defendant is a "Regulated Person" under the MCPA*

For the purposes of establishing liability, this Court has already held "Ocwen is a regulated person under the MCPA." *Keyes v. Ocwen Loan Servicing, LLC*, No. 17-CV-11492, 2018 WL 1315804 , at *3 (E.D. Mich. Mar. 14, 2018). Therefore, Defendant is a "regulated person" who is subject to the consumer protections of the MCPA.

## iii.   *Defendant's Conduct Violates the MCPA*

The MCPA generally prohibits the use of unfair, unconscionable, or deceptive methods, acts or practices by regulated persons in their attempt to collect a debt. *See* Mich. Comp. Laws § 445.903(1). The MCPA specifically prohibits "[u]sing a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor." Mich. Comp. Laws § 445.252(n).

To determine whether a debt collector's calls "amount to harassment, annoyance or abuse, the volume of the calls must be examined along with the pattern in which they were made and whether they were accompanied by oppressive conduct." *Pugliese*, 2010 WL 2632562, at *9. Therefore, as a matter of law, courts may find conduct is indisputably harassing. *See Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1227 (E.D. Cal. 2010) ("Although there is no bright-line rule, certain conduct generally is found to either constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.")

Here, Defendant not only completely disregarded Plaintiff's repeated requests for the calls to cease, but would even call Plaintiff multiple times a day, with calls sometimes placed within minutes of one another. PSMF ¶ 10, 12. Defendant's refusal to honor Plaintiff's repeated requests for the calls to stop also suffices as a "harassing, oppressive, or abusive method to collect a debt." PSMF ¶¶ 28-42. Such conduct was not only harassing to Plaintiff, but Defendant's oppressive conduct is also harassing to a reasonable person, especially when done pursuant to a policy to not honor requests for calls to cease. PSMF ¶ 45. Plaintiff repeatedly told Defendant that Defendant called at inconvenient times and that the calls were harassing and illegal. PSMF ¶¶ 35, 38, 43, 44.

Pursuant to the MCPA, Defendant is a "regulated person" who attempted to collect a "debt" from Plaintiff, who is a "debtor," in a manner prohibited by the MCPA. The only question that remains is damages, which Plaintiff reserves for trial.

## V.      CONCLUSION

Defendant called Plaintiff's cellular telephone number, after Plaintiff unequivocally revoked consent to be called, using an ATDS. Defendant willfully placed another 581 telephone calls to Plaintiff's cellular telephone number when it did not have consent to call Plaintiff using an ATDS.   Defendant knew that Plaintiff did not want Defendant to call her, but insisted that it would continue to call Plaintiff anyway because Defendant had a policy to not honor oral revocation. As such, Defendant committed 581 willful violations of the TCPA and Plaintiff is entitled to up to $1,500.00 per call.

Further, the calls to Plaintiff were repeated, continuous, harassing and inconvenient. Defendant knew that the calls were harassing and inconvenient to Plaintiff. Accordingly, Defendant is liable under the MCPA for a willful violation of the statute. Liability under the MCPA should be found and the Court should reserve the issue of damages for trial.

HYDE & SWIGART

Date: <u>May 30, 2018</u>     By:<u>/s/ Anthony Chester   </u>
           Anthony P. Chester (P77933)
           HYDE & SWIGART
           120 South 6th Street, Suite 2050
           Minneapolis, MN 55402
           Telephone:   (952) 225-5333
           Email: tony@westcoastlitigation.com

           *Attorneys for Darcel Keyes*

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony Chester, hereby certify that on May 30, 2018, I electronically filed with the Clerk of the U.S. District Court, Eastern District of Michigan, the foregoing **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** by using the CM/ECF system, which will send notification of such filings to all attorneys of record.

Date: <u>May 30, 2018</u>

By:<u>/s/ Anthony Chester</u>
    Anthony P. Chester (P77933)
    **HYDE & SWIGART**
    120 South 6th Street, Suite 2050
    Minneapolis, MN 55402
    Telephone:  (952) 225-5333
    Email: <u>tony@westcoastlitigation.com</u>

    *Attorneys for Darcel Keyes*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Darcel Keyes, | Case No.: 2:17-cv-11492 (GAD/SDD) |
| | Hon. Gershwin A. Drain |
| Plaintiff, | |
| | |
| v. | **Local Rule 7.1 Meet and Confer** |
| | **Statement** |
| Ocwen Loan Servicing, LLC, | |
| | |
| Defendant. | |

Prior to the filing of this motion, there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

### HYDE & SWIGART

Date: <u>May 30, 2018</u>            By:<u>/s/ Anthony Chester</u>
                                          Anthony P. Chester (P77933)
                                          **HYDE & SWIGART**
                                          120 South 6th Street, Suite 2050
                                          Minneapolis, MN 55402
                                          Telephone:   (952) 225-5333
                                          Email: tony@westcoastlitigation.com

                                          *Attorneys for Darcel Keyes*