**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

DARCEL KEYES,

      Plaintiff,

Case #. 2:17-cv-11492-GAD-SDD

vs.

OCWEN LOAN SERVICING, LLC ,

      Defendant.

## MOTION TO EXCLUDE THE REPORT OF JEFFREY HANSEN

Defendant Ocwen Loan Servicing, LLC ("Ocwen") moves to exclude the Report of Jeffrey Hansen and in support submits the attached Memorandum of Law.

### CERTIFICATION OF COUNSEL

Pursuant to Eastern District of Michigan Local Rule 7.1, there was a conference between attorneys in which the counsel for Ocwen explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

    Respectfully submitted,

    OCWEN LOAN SERVICING, LLC.,
    Defendant

By: /s/ Jennifer W. Weller
    David M. Schultz
    Jennifer W. Weller
    Hinshaw & Culbertson LLP
    151 N. Franklin, Suite 2500
    Chicago, IL  60606
    Tel: 312-704-3000
    E-mail: jweller@hinshawlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

DARCEL KEYES,

        Plaintiff,

Case #. 2:17-cv-11492-GAD-SDD

vs.

OCWEN LOAN SERVICING, LLC ,

        Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO EXCLUDE THE REPORT OF JEFFREY HANSEN**

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED...................................................................................... 4

ARGUMENT .................................................................................................................................. 5

BRIEF SUMMARY OF BACKGROUND AND HANSEN'S REPORT ..................................... 5

STANDARD OF LAW................................................................................................................... 6

ARGUMENT .................................................................................................................................. 8

    A.     HANSEN'S REPORT LACKS A PROPER FACTUAL BASIS ..................................... 8

    B.     HANSEN'S STATEMENTS OF LAW AND METHODOLOGY IS IMPROPER ........ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnes v. Kerr Corp*,
   418 F.3d 583 (6th Cir. 2005) ..................................................................................................6

*Bourjaily v. United States*,
   483 U.S. 171 (1987)................................................................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ...............................................................................5, 7, 8, 9, 10

*Dominguez v. Yahoo!, Inc.*,
   2017 U.S. Dist. LEXIS 11346 (E.D.Pa. Jan. 27, 2017) ...........................................................9

*GE v. Joiner*,
   522 U.S. 136 (1997)................................................................................................................8

*Greenwell v. Boatwright*,
   184 F.3d 492 (6th Cir. 1999) ................................................................................................7, 8

*Kumho. Johnson v. Manitowoc Boom Trucks, Inc.*,
   484 F.3d 426 (6th Cir. 2007) ..................................................................................................7

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)............................................................................................................6, 7

*Legg v. Voice Media Group, Inc.*,
   2014 U.S. Dist. LEXIS 61322 (S.D.Fla. May 2, 2014) ...........................................................8

*Marshall v. CBE Grp., Inc.*,
   No. 216cv02406, 2018 WL 1567852 (D. Nev. Mar. 30, 2018)..............................................11

*Mohamed v. Am. Motor Co., LLC*,
   2017 U.S. Dist. LEXIS 159766 (S.D.Fla. Sept. 28, 2017) .......................................................9

*Pride v. BIC Corp.*,
   218 F.3d 566 (6th Cir. 2000) ................................................................................................7, 8

*United States v. Bonds*,
   12 F.3d 540 (6th Cir.1993) ...................................................................................................7, 8

**Statutes**

47 U.S.C. § 227(a)(1) ............................................................................................................. 5, 11

47 U.S.C. § 227(b)(1)(A) ............................................................................................................. 5

Telephone Consumer Protection Act, 47 U.S.C. §227 ............................................................... 10

**Other Authorities**

FED. R. EVID. 104(a) ................................................................................................................... 7

Fed Rules Evid R 702, Notes ........................................................................................................ 9

Federal Rule of Evidence 702 ............................................................................................. 6, 7, 10

## INDEX OF EXHIBITS

Report of Jeffrey Hansen

Report of Aaron Woolfson

## **STATEMENT OF ISSUES PRESENTED**

Whether the Court should exclude the Report and opinions of Jeffrey Hansen pursuant to Daubert and Federal Rule of Evidence 702?

Ocwen says "Yes"

**ARGUMENT**

In order to prove her claim that Ocwen violated the Telephone Consumer Protection Act ("TCPA"), Plaintiff must have evidence that Ocwen placed telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS"). Rather than proffer evidence that Ocwen's Aspect system is an ATDS as defined in the TCPA, Plaintiff relies on the report of Jeffrey Hansen ("Report"). Hansen's Report, however, lacks an adequate factual basis including the fact that he has never seen, tested, inspected or placed calls through Ocwen's Aspect system. In addition he relies on flawed interpretations of the law and unreliable methodology. Report, ¶¶20, 25,27,31,38-39. Accordingly Hansen's Report lacks reliability under *Daubert* and his Report and opinions should be excluded.

**BRIEF SUMMARY OF BACKGROUND AND HANSEN'S REPORT**

Ocwen is a mortgage loan servicer and services two of Plaintiff's loans. Ocwen used the Aspect system to call Plaintiff during the relevant time period.[1] Plaintiff alleges "[b]etween May 10, 2013 and November 21, 2016, Defendant called Plaintiff on Plaintiff's cellular telephone number ending in 9378 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), and/or using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A)." (SAC, ¶22). Plaintiff alleges "[t]his ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (SAC, ¶23).

Plaintiff's counsel retained Jeffrey Hansen "to assist Plaintiff's counsel in evaluating and analyzing the telephone dialing systems used by Defendant [Ocwen] in placing telephone calls to Plaintiff." Report, ¶6.

---

[1] *See* October 31, 2017 Opinion and Order, Dkt #25 (finding that claims based on calls prior to May 10, 2013 are time barred)

5

Jeffrey Hansen is the principal of Hansen Legal Technologies, Inc., a company in the business of handling "Information Technology, including investigations and analysis of electronic data." Report, ¶4. He has no experience in mortgage servicing. Report, Ex. A. Though he was tasked with evaluating and analyzing Ocwen's Aspect system, Hansen has never seen, tested, inspected or placed calls through Ocwen's Aspect system nor has he observed how Ocwen uses the Aspect system. As such Hansen does not identify the multiple touchpoints between agents and Ocwen's Aspect system. Instead Hansen bases his opinions on a general understanding of computers and Aspect manuals. Report, ¶¶34, 35. Hansen opines that "[a]ll computers can generate random or sequential numbers" including Hansen's "laptop running Linux." Report, ¶34. He states that the Aspect system runs on Windows or Linux and is an ATDS and not TCPA compliant, while Ontario Systems, a system that also runs on computers, is TCPA compliant. Report, ¶¶31,35, Ex. 13. He does not explain why there is a distinction between these two systems.

Hansen concludes "Ocwen used a predictive dialer, a type of automatic telephone dialing system, to place calls to the Plaintiff." Report, ¶15. In reaching this conclusion, he considered the theoretical use of the system and not how Ocwen is actually using it.

## **STANDARD OF LAW**

The admission or exclusion of expert testimony is within the broad discretion of the trial court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), *Barnes v. Kerr Corp*, 418 F.3d 583, 588 (6th Cir. 2005). Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702.

As amended, the rule reflects the United States Supreme Court's decisions in *Daubert* and *Kumho*. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, (6th Cir. 2007). In *Daubert*, the Supreme Court charged trial courts with the task of "gatekeeping" to protect juries from being exposed to misleading or unreliable scientific testimony. 509 U.S. at 592-593, 597. *Kumho* clarified the gatekeeper role applied to all expert testimony, not just testimony based in science. 526 U.S. at 147.

As gatekeeper, a trial judge should ensure that expert testimony is both relevant and reliable. *Kumho,* 526 U.S. at 147 (*quoting Daubert*, 509 U.S. at 589). Initially, the witness should be qualified as an expert by reference to his or her knowledge, skill, experience, training, or education. *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). The requirement that testimony be relevant stems from the portion of Rule 702 which demands the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. The relevancy inquiry is often described as ensuring there is a "fit" between the testimony and the issue to be resolved by the trial. *Id.; Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) (*citing United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993)).

Under Rule 702, a trial court must determine whether proposed testimony is (1) scientific, technical or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 592. The party offering the expert testimony must prove its admissibility by a preponderance of the proof. *Id.* at 593 n. 10 (citing FED. R. EVID. 104(a) and *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987)); *Pride*, 218 F.3d at 578.

7

The reliability requirement focuses on the methodologies and principles which form the basis of the expert's testimony. *Greenwell,* 184 F.3d at 497 (*citing Bonds*, 12 F.3d at 556). There is no single criterion for determining whether a specific methodology is reliable. *Pride*, 218 F.3d at 577. In *Daubert*, the Supreme Court provided a non-exhaustive list of factors which may inform a trial judge's decision. Those factors include (1) whether the theory or technique can be or has been tested, (2) whether the theory has been subjected to peer review and publication, (3) whether there is any known rate of error or standards controlling the technique's operation, and (4) whether the theory or technique enjoys general acceptance within the relevant community. *Daubert*, 509 U.S. at 592-594.

Where the conclusions offered by the expert are not supported by the data upon which the expert relies, a trial court need not admit the expert's testimony. *GE v. Joiner*, 522 U.S. 136, 146 (1997) (explaining that *Daubert* does not require a court to "admit opinion evidence that is connected to existing data only by the ipse dixit of an expert" and *citing Turpin v. Merrell Dow Pharm., Inc*., 959 F.2d 1349, 1360 (6th Cir.1992)).

## ARGUMENT

**A.      Hansen's Report lacks a proper factual basis**

Hansen's Report lacks a proper factual basis because it is based on his review of manuals and use of his own laptop computer rather than an inspection of the hardware or software of the Aspect system in the environment in which Ocwen uses it.  He has never seen, tested, inspected, or placed calls through Ocwen's Aspect system.  Instead he looked at a manual and performed a series of computer instructions on his own laptop computer.  Report, ¶¶23, 34, *see Legg v. Voice Media Group, Inc*., 2014 U.S. Dist. LEXIS 61322, *15 (S.D.Fla. May 2, 2014)(in deciding a motion to bar an expert in a TCPA case, the court held that "Phaz2's client handbook, standing alone, provides an insufficient basis for Snyder's opinion regarding the capabilities of VMG's

8

systems."). Hansen's opinion has been excluded as unreliable, where, as here, he did not "test or use the software in any way." *Mohamed v. Am. Motor Co., LLC*, 2017 U.S. Dist. LEXIS 159766, *11 (S.D.Fla. Sept. 28, 2017).[2] Moreover, while Hansen claims he is "familiar with the manner in which outbound dial lists are used and maintained in the industry in which Ocwen operates" he does not identify which "industry" this is or how he is familiar with "the industry in which Ocwen operates." Report, ¶9. He further bases his opinions on alleged "industry" definitions and understandings, but has no background or knowledge of mortgage servicing. Report, Ex. A, Resume of Jeffrey Hansen. He does not identify the relationship between Ocwen's agents and the telephone system they are using nor does he address the multiple touch points in which human involvement is necessary in use of Ocwen's Aspect system.

If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." Fed Rules Evid R 702, Notes of Advisory Committee on 2000 amendments, *citing Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

Hansen's experience in IT and electronic evidence has nothing to do with the heavily regulated mortgage loan servicing industry, particularly where, as here, instead of inspecting the actual systems and how they are used by Ocwen, Hansen relied on manuals and ran a PERL script on his laptop. Report, ¶34. Accordingly, Hansen's theory and technique cannot be tested

---

[2] Hansen's opinion was also excluded in *Dominguez v. Yahoo!, Inc.,* 2017 U.S. Dist. LEXIS 11346, *59 (E.D.Pa. Jan. 27, 2017)(where Yahoo's system had been abandoned and could not be resuscitated such that there was no way to test expert hypotheses, the expert reports would be unhelpful to a jury asked to assess liability).

9

as provided and his opinions do not meet the requirements of Federal Rule of Evidence 702 or *Daubert*.

B. **Hansen's statements of law and methodology is improper**

Not only do Hansen's conclusions lack a proper factual basis because he failed to inspect Ocwen's system or consider how it is actually being used, including the human intervention used in operating the system, his opinions rely on vacated FCC Orders. Report, ¶16,20,21,27,33,38.

In doing so he confusingly refers to Ocwen's system using different and inconsistent terminology as follows:

- A predictive dialer, a type of automatic telephone dialing system, Report, ¶15

- A predictive dialer or otherwise has the characteristics of an "automatic telephone dialing system" ("ATDS") as defined by the Telephone Consumer Protection Act, 47 U.S.C. §227, Report, ¶16, 22

- Within the industry, autodialers only need to store or produce numbers and call them to be an ATDS. In this case, the predictive dialing system used by Ocwen is capable of doing both." Report, ¶17.

- Ocwen used the above predictive dialer to place telephone calls to Plaintiff, and that the dialer has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers. Specifically, the dialers are capable of automatically and without human intervention calling numbers that are stored as a list, which itself is stored in a table of a database. Report, ¶24.

None of the above statements accurately defines an ATDS under the TCPA statutory definition. Hansen seemingly concludes that because Aspect is a predictive dialer that can dial from a stored list, it is an ATDS (though he also vaguely claims a predictive dialer has "characteristics" of an ATDS as defined by the TCPA- whatever that means). In the wake of *ACA Int'l*, Hansen's analysis is wrong.

With respect to capacity of predictive dialers, the D.C. Circuit explicitly rejected the FCC's 'expansive' interpretation that an ATDS could include technology that dials from a "fixed

set of numbers" "rather than only systems that have the capacity to dial randomly or sequentially." *See Marshall v. CBE Grp., Inc.*, No. 216cv02406, 2018 WL 1567852, at *7 (D. Nev. Mar. 30, 2018).[3] As a consequence of the holding in *ACA Int'l,* when considering whether something is an ATDS, a court must apply the statutory definition (47 USCS § 227(a)(1)), i.e., the equipment must have the capacity to produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

Unlike an ATDS as defined in the TCPA, the Aspect system must receive a list of telephone numbers which are stored in Ocwen's RealServicing database. Ocwen's agents make calls to only those numbers and accounts that have been selected for campaigns by Ocwen's workforce management team members in order to ensure compliance with a variety of regulatory, statutory, and other factors, before calling. It would make absolutely no sense for Ocwen to expend significant resources to alter Aspect's source code to allow it to generate random or sequential numbers, store, and dial them. Hansen's conclusion that the Aspect system is an "ATDS" because it is a predictive dialer that can dial from a list- rather than a system that can generate random or sequential numbers, store, and dial them as defined in the TCPA- is wrong.

---

[3] As further set forth in Defendant's Motion for Summary Judgment the D.C. Circuit in *ACA Int'l* vacated portions of the TCPA Omnibus Order that had interpreted, and improperly expanded, the definition of an ATDS. The D.C. Circuit's ruling not only invalidated the FCCs 2015 Order but also the prior orders that the 2015 Order had reaffirmed:
> While the Commission's [2015 Order] purports to reaffirm the prior orders, that does not shield the agency's pertinent pronouncements from review. The agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform. Petitioners covered their bases by filing petitions for both a declaratory ruling and a rulemaking concerning that issue and related ones. The ruling is thus reviewable on both grounds. Id. at 701.

Hansen makes this conclusion regardless of how the technology was actually being used, how much human involvement is necessary in using Ocwen's Aspect system and the fact that "[e]ven if Ocwen wanted to establish a method by which Aspect would generate random or sequential numbers, it can't- because Aspect has not been programmed to perform in such a [manner]." Woolfson Report, ¶23. Nor could Ocwen make Aspect become an ATDS because Ocwen does not own, nor does it have access, to Aspect's source code. Woolfson Report, ¶24.

In reaching his improper conclusion Hansen contends that "all computers can generate random numbers." Report, ¶¶15, 17, 34. Whether software can be programmed to generate random or sequential numbers (using Hansen's example of running a program on his regular laptop, Hansen ¶34), is irrelevant because the D.C. Circuit has found that such interpretation of capacity is "an unreasonably, and impermissibly, expansive one." *ACA Int'l*, 885 F.3d at 700.

As Woolfson states, "Just because a computer is capable of something does not mean that those programming layers (called sub-routines) are exposed, or utilized by the program running on the computer, or that the programs running with the computer have been interfaced to those functions." Woolfson, ¶39. Hansen's focus on the theoretical use of the Aspect system, rather than its actual use, is simply wrong.

Moreover, as a further illustration of Hansen's improper methodology, he touts the Ontario system as TCPA compliant- a system that runs off computers- while finding that Ocewn's Aspect system is not TCPA compliant. As Woolfson states:

> The fact is that neither Aspect, nor Ontario (which Hansen states is TCPA compliant) has the ability to generate random or sequential numbers <u>and</u> dial those numbers. Mr. Hansen attempts to contrast the TCPA-compliant Ontario product with the alleged non-compliant Aspect system that Ocwen uses *even though* the particular software upon which Mr. Hansen draws the contrast uses the *same computer hardware*. In sum, Mr. Hansen defends the use of certain software while criticizing its use by other companies, independent of the *implemented* feature sets. Woolfson, ¶36.

12

Hansen's conclusion that the Aspect system is a predictive dialer with "characteristics of an 'automatic telephone dialing system'" is improper and unreliable and would accordingly not assist the trier of fact.

WHEREFORE, Defendant Ocwen Loan Servicing, LLC respectfully requests this Court Exclude the Report of Plaintiff's Expert, Jeffrey Hansen.

Dated: May 30, 2018

Respectfully submitted,

OCWEN LOAN SERVICING, LLC,
Defendant

By: /s/ Jennifer W. Weller

| | |
|---|---|
| Nancy K. Chinonis | David M. Schultz |
| Cline, Cline & Griffin, P.C. | Jennifer W. Weller |
| 503 S. Saginaw St., Suite 1000 | Hinshaw & Culbertson LLP |
| Flint, MI 48502 | 151 N. Franklin, Suite 2500 |
| Tel:   810-232-3141 | Chicago, IL  60606 |
| Email: nchinonis@ccglawyers.com | Tel: 312-704-3000 |
| | E-mail: jweller@hinshawlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2018, I electronically filed the with the Clerk of the U.S. District Court, Eastern District of Michigan, the foregoing **Motion to Exclude the Report of Jeffrey Hansen** by using the CM/ECF system, which will send notification of such filing(s) to all attorneys of record and via U.S. Mail, First Class to all non-attorneys:

Anthony P. Chester
Hyde & Swigart
120 S. 6th Street, Suite 2050
Minneapolis, MN  55402
Email:  tony@westcoastlitigation.com

/s/Jennifer W. Weller
Hinshaw & Culbertson LLP

301950214v1 0998756