UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARCEL KEYES,

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC

    Defendant.

_____/

Case No. 17-cv-11492

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE [54], GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [56], AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [52]

## I.      Introduction

Plaintiff Darcel Keyes commenced this litigation against Ocwen Loan Servicing, LLC ("Ocwen") on May 10, 2017.  *See* Dkt. No. 1.  In her second amended complaint, she raises four claims:  negligent violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, (Count I); willful or knowing violations of the TCPA (Count II); negligent violations of the Michigan Regulation of Collection Practices Act ("MRCPA"), MICH. COMP. LAWS § 445.251 *et seq.*, (Count III); and willful violations of the MRCPA (Count IV).  *See* Dkt. No. 29, pp. 12–14 (Pg. ID 294–96).

The parties have filed cross-motions for partial summary judgment.  Keyes was first to move for partial summary judgment and did so on May 30, 2018.  Dkt.

No. 52. She requests that the Court grant her summary judgment as to Ocwen's liability under both the TCPA and the MRCPA. *See id.* at p. 3 (Pg. ID 760). She also asks the Court to grant her motion as to willfulness and statutory damages of $1,500 under the TCPA. *See id.* Ocwen responded to Keyes's motion on June 21, 2018. *See* Dkt. No. 83. Keyes replied in support of her motion on July 12, 2018. *See* Dkt. No. 91.

On May 30, 2018, the same day that Keyes moved for summary judgment, Ocwen requested that the Court exclude the expert report of Jeffrey Hansen, which Keyes relies on in her motion for partial summary judgment. *See* Dkt. No. 54. Keyes responded to the motion to exclude on June 13, 2018. *See* Dkt. No. 74. Then, on June 20, 2018, Ocwen replied in support of its motion. *See* Dkt. No. 81.

Ocwen also moved for partial summary judgment on May 30, 2018. *See* Dkt. No. 56. It requests an entry of judgment on Keyes's TCPA claims, Counts I and II, and requests that the Court rule in its favor on damages regarding Keyes's MRCPA claims, Counts III and IV. *See id.* Keyes opposed Ocwen's motion in a brief filed on June 20, 2018, and Ocwen replied on July 12, 2018. *See* Dkt. Nos. 80, 89.

Presently before the Court are Ocwen's Motion to Exclude the Expert Report of Jeffrey Hansen [54], and the Parties' Cross-Motions for Partial Summary Judgment [52, 56]. The motions are fully briefed and the Court will decide these motions without a hearing pursuant to Eastern District of Michigan Local Rule

7.1(f)(2).  For the reasons detailed below, the Court will GRANT Ocwen's Motion to Exclude the Expert Report of Jeffrey Hansen [54].  The Court will GRANT Ocwen's Motion for Partial Summary Judgment as to Keyes's TCPA claims [56], and will DENY Keyes's Motion for Partial Summary Judgment regarding her TCPA claims [52].  Because no federal claims will survive Ocwen's motion for partial summary judgment, the Court will decline to exercise supplemental jurisdiction over Keyes's remaining state law claims.

## II.   Background

Keyes asserts that Ocwen called her at least 2,781 times between May 2013 and December 2016.  *See* Dkt. No. 52, p. 5 (Pg. ID 762).  She contends that Ocwen was attempting to collect on allegedly overdue payments, and that Ocwen continued to call her over her objections.  *Id.*  When calling Keyes, Ocwen used a device called the Aspect Unified IP (the "Aspect System").  *Id.*  This system uses the Linux and Windows operating systems.  *Id.* at p. 20 (Pg. ID 777).

It "calls telephone numbers from a stored list."  Dkt. No. 80, p. 5 (Pg. ID 4946).  That list is first stored on a database called Realservicing, and Realservicing maintains borrower's contact information, including their phone numbers.  Dkt. No. 56, p. 20 (Pg. ID 1044).  The parties disagree about whether the Realservicing database is loaded onto the Aspect System, or whether it is separate from the system.  All agree, however, that the Aspect System can only call numbers stored in the

3

Realservicing database. *Id.* If Ocwen wanted to change the Aspect System to call numbers outside of that set list, it would need to access the system's source code. *Id.* at pp. 9–10 (Pg. ID 1033–34). Ocwen does not have access to the system's source code, and therefore, would need external permission to modify the Aspect System. *See id.*

## III. Legal Standard

First, on a motion to exclude, a party offering an expert's opinion bears the burden of establishing the admissibility of that opinion by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 344, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The *Daubert* court established considerations for determining whether an expert witness's testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993). These considerations include: (1) whether the expert's

theory has been tested; (2) whether the expert's theory "has been subjected to peer review and publication"; (3) whether there is a "known or potential rate of error" and standards that control the particular technique; and (4) whether the theory or technique has been generally accepted within the pertinent community. *Id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

These considerations are neither definitive nor exhaustive, and may not be relevant to the assessment in a particular case. *Kumho Tire*, 526 U.S. at 141. As such, a trial court has broad latitude to determine whether these considerations are reasonable measures of reliability. *Id.* at 153; *see also In re Scrap Metal*, 527 F.3d 517, 529 (6th Cir. 2008) (noting that the test for reliability is " 'flexible,' and the *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case" (quoting *Kumho Tire*, 526 U.S. at 150))). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146 (1997). Consequently, "a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (citing *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)).

"But 'rejection of expert testimony is the exception, rather than the rule[.]' " *In re Scrap Metal*, 527 F.3d at 530 (quoting FED. R. EVID. 702 advisory comm.'s

note, 2000 amend.). Courts generally permit expert testimony based on "allegedly erroneous facts when there is some support for those facts in the record." *Id.* Additionally, it is important to distinguish between questions of credibility and accuracy, and questions of reliability. *Id.* at 529–30. A court may not exclude expert testimony simply for dubious credibility or accuracy. *Id.* To the contrary, it must decide whether the testimony "rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* (citing FED. R. EVID. 702); *see also U.S. v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993) (concluding that "[w]here an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded."). Therefore, any issue regarding the credibility or accuracy of admitted expert testimony goes to the weight of the evidence, and can be addressed via cross-examination and "presentation of contrary evidence" by opposing counsel. *In re Scrap Metal*, 527 F.3d at 530 (quoting *Daubert* 509 U.S. at 596).

As for the cross-motions for partial summary judgment, Federal Rule of Civil Procedure 56(a) provides that "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A court must view the facts, and draw reasonable inferences from the facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine

dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The critical inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.    Discussion

Ocwen argues that the Court should exclude the report of expert Jeffrey Hansen. *See* Dkt. No. 54. The Court agrees. Therefore, the Court will not consider Hansen's report in resolving the cross-motions for partial summary judgment.

Additionally, the Court will grant Ocwen's motion for partial summary judgment as to the TCPA claims and will therefore deny Keyes's motion for partial summary judgment on her TCPA claims. Dkt. Nos. 52, 56. Based on that holding, only Keyes's state law claims are left in this case. The Court will decline to exercise supplemental jurisdiction over these state law claims, however.

The Court will first analyze Ocwen's motion to exclude and will then turn to the merits of this action.

### A.     Motion to Exclude Expert Report of Jeffrey Hansen [54]

Ocwen makes two arguments for why the Court should exclude Hansen's report. It first claims that Hansen's report lacks the proper factual basis required by

Federal Rule of Evidence 702(b). Second, it claims that Hansen's statements of law and methodology are not reliable as required by Federal Rule of Evidence 702(c). Both of these arguments have merit, and thus, the Court will grant Ocwen's motion to exclude Hansen's report.

### 1. Hansen's Report Lacks a Proper Factual Basis.

Ocwen's first argues that Hansen's report lacks a proper factual basis because he has merely reviewed manuals and run tests on his computer, and he has not inspected the actual Aspect System which Ocwen uses to make calls. Dkt. No. 54, p. 10 (Pg. ID 963). The Court agrees, as a wealth of authority supports Ocwen's position.

Ocwen persuasively references two cases where courts excluded expert testimony because experts did not test the software in question, and a third case where a court excluded Hansen's report because his report would not have assisted a jury in reaching a verdict. *Id*. at pp. 10–11 (Pg. ID 963–64). First, in *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 1767097, at *4–5 (S.D. Fla. May 2, 2014), the court excluded an expert's testimony because he had based his report on a handbook rather than his personal inspection of the defendant's systems. Second, a court excluded Hansen's testimony as Hansen did not personally test or use the defendant's software. *Mohamed v. Am. Motor Co., Ltd. Liab. Co.*, No. 15-23353-Civ-COOKE/TORRES, 2017 WL 4310757, at *3–4 (S.D. Fla. Sep. 28, 2017).

Third, Ocwen notes that another court excluded Hansen's report because the report would not have been useful to a jury. *See Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2017 WL 390267, at \*19 (E.D. Pa. Jan. 27, 2017), *aff'd*, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018). The court reached that conclusion because it was impossible to test Hansen's hypothesis; the defendant's system had been abandoned and could not be resuscitated. *See id.*

Likewise, several Sixth Circuit cases emphasize the importance of testability under *Daubert*.[1] In *Pride v. BIC Corp.*, the Sixth Circuit held that certain expert testimony was inadmissible because of "[t]he failure of Pride's experts to test their hypotheses in a timely and reliable manner or to validate their hypotheses by reference to generally accepted scientific principles as applied to the facts of th[at] case." 218 F.3d 566, 578 (6th Cir. 2000). The Sixth Circuit also excluded expert testimony where, without testing the lap belt at issue, an expert concluded that the lap belt was in working condition. *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 304 (6th Cir. 1997).

Here, there is no indication that Hansen has ever tested or inspected an Aspect system, let alone the Aspect System which Ocwen used to call Keyes. Keyes asserts, however, that Hansen has "analyzed the Aspect UIP predictive dialer in other

---

[1] The other three factors enumerated in *Daubert* are not relevant here.

matters numerous times over the last 10 years."[2]  Dkt. No. 74, p. 10 (Pg. ID 1594) (quoting Dkt. No. 74-3, p. 13 (Pg. ID 1618)).  Specifically, Keyes highlights two cases in which Hansen supposedly analyzed the Aspect System that Ocwen used, *Mashiri v. Ocwen Loan Servicing, LLC*, No. 3:12-cv-02838-L-MDD, 2013 WL 5797584 (S.D. Cal. Oct. 28, 2013) and *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2015 WL 1910989 (N.D. Ill. Apr. 27, 2015).

But Keyes's reliance on those cases is misplaced.  Hansen did not inspect or test Ocwen's Aspect System in those matters.  Dkt. No. 81, p. 5 (Pg. ID 5068).  In *Mashiri*, Hansen reviewed an amended declaration and an FCC order, as well as discovery responses and manuals.  Dkt. No. 81-1, p. 4 (Pg. ID 5078).  And he reviewed general documents, manuals, and deposition records in *Snyder*.  Dkt. No. 81-2, p. 5 (Pg. ID 5108–09).

Hansen's report lacks an adequate factual basis because, like the experts whose testimony was excluded in the cases noted above, Hansen has not tested the relevant equipment.  Indeed, in drafting his report, Hansen simply reviewed documents and manuals regarding (1) predictive dialers and automatic telephone dialing systems ("ATDSs"), and (2) the Aspect System generally.  Dkt. No. 54-1, p.

---

[2]  Hansen's report reflects that he has "analyzed" the Aspect system in the past, and Keyes's reply states that Hansen has "reviewed" the system in the past.  Dkt. No. 54-1, p. 12 (Pg. ID 980); Dkt. No. 74, p. 10 (Pg. ID 1594).  But those contentions do not indicate that he has personally inspected the Aspect System in question here.

1 (Pg. ID 979). As such, Hansen did not test his theory regarding how Ocwen places calls through Aspect, as required by *Daubert*. And his involvement and analysis of an Aspect system in other litigations does not establish that testability exists here. *See Marshall v. CBE Grp., Inc.*, 2018 WL 1567852, at *8 (D. Nev. Mar. 30, 2018) (denying motion to exclude for non-compliance with local rules, but noting that an expert's examination of "the [disputed equipment] in several TCPA cases' does not substitute for his unfamiliarity with [the] system used in this case.").

No evidence in the record indicates that Hansen has tested or inspected the Aspect System which Ocwen called Keyes from, or that Hansen has reviewed any patents which detail the specifications for how Ocwen uses the Aspect System to make calls. *Compare Strauss v. CBE Grp., Inc.*, No. 15-62026-CIV, 2016 WL 2641965, at *3 (S.D. Fla. Mar. 22, 2016). As a result, Hansen's report is "unsupported speculation" and a "mere guess" regarding how Ocwen uses the Aspect System. *See In re Scrap Metal*, 527 F.3d at 520–30. His report, then, is insufficient under *Daubert*. There is "simply too great an analytical gap between the data and the opinion proferred" by Hansen, making his report simply the "*ipse dixit*" of an expert. *Joiner*, 522 U.S. at 146.

### 2. Hansen's Improper Statements of Law and Methodology

Ocwen's second key argument is that Hansen's statements of law and methodology are improper. Dkt. No. 54, p. 12 (Pg. ID 965). According to Ocwen,

Hansen relied on vacated FCC orders when he concluded that Ocwen's Aspect System is an ATDS. *Id.* In support, Ocwen cites *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). There, the court set aside the FCC's "expansive" interpretation of an ATDS, an interpretation which the FCC determined to include equipment that can generate random or sequential phone numbers and dial them, and equipment without that ability. *Id.* at 702–03. Thus, Ocwen claims that Hansen's conclusion— that the Aspect System is an ATDS because it is a predictive dialer—is wrong as Ocwen's agents only call numbers saved in the Aspect System. Dkt. No. 54, at p. 13 (Pg. ID 966). Second, Ocwen argues that Hansen used different and inconsistent terminology when defining or describing an ATDS.[3] *Id.* at p. 12 (Pg. ID 965).

Ocwen is correct that Hansen's statements of law are improper; however, they are improper not because they inaccurately state the law, but because expert witnesses are not permitted to make legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). An expert makes a legal conclusion when "he defines the governing legal standard or applies the standard to the facts of the case." *Id.* (citations omitted). Hansen has not only defined the governing legal standard by providing an extensive history and explanation of what constitutes an

---

[3] Ocwen offers examples of Hansen's inconsistent use of terminology, including his use of the terms: "a predictive dialer, a type of automatic telephone dialing system;" "a predictive dialer or [device that] otherwise has the characteristics of an 'automatic telephone dialing system' (ATDS);" "autodialers only need to store or produce numbers and call them to be an ATDS." *See* Dkt. No. 54, p. 12 (Pg. ID 965).

ATDS under the TCPA and the Commission's guidance, but he has also impermissibly applied that standard to the facts of this case by concluding that Ocwen's Aspect System is an "ATDS as contemplated by the TCPA and clarified by the FCC[.]" Dkt. No. 54-1, p. 18 (Pg. ID 986). Thus, the Court will grant Ocwen's Motion to Exclude Hansen's Report because Hansen impermissibly constructed legal standards and made legal conclusions.

In sum, Hansen failed to test his expert theory by inspecting or testing the Aspect System with the specifications used by Ocwen. His testimony, then, is based on insufficient facts or data. Hansen's report also wrongly includes statements and conclusions of law. Therefore, the Court will grant Ocwen's Motion to Exclude the Report of Jeffrey Hansen. Dkt. No. 54.

B.    Parties' Cross-Motions for Partial Summary Judgment [52, 56]

Ocwen will succeed on its motion for partial summary judgment as to Keyes's TCPA claims. The Court will accordingly deny Keyes's motion for partial summary judgment as to her TCPA claims. Keyes is also not entitled to summary judgment on her MRCPA claims, as the Court will not exercise supplemental jurisdiction over those claims.

1.    TCPA Claims (Counts I and II)

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential

13

number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  As the *ACA International* court explained, this definition has two key components:  an equipment's "capacity" and its functions.

a)      Applicable Legal Standard

The capacity and functions of an ATDS were the subject of a 2015 FCC ruling, in which the Commission attempted to clarify previous declarations regarding these definitions.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) [hereinafter "2015 Declaratory Ruling"].  The *ACA International* opinion addressed whether the Commission's guidance in the 2015 Declaratory Ruling was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

And in *ACA International*, the D.C. Circuit set aside the Commission's declarations regarding the capacity and functions of an ATDS.  The court determined that those declarations gave conflicting advice and, in other respects, exacerbated confusion emanating from earlier FCC orders.  For example, in the 2015 Declaratory Ruling, the Commission concluded "that the 'capacity' of calling equipment 'includes its potential functionalities' or 'future possibility,' not just its 'present ability.' "  *ACA Int'l*, 885 F.3d at 695 (quoting 2015 Declaratory Ruling at 7974 ¶ 16; *id.* at 7975 ¶ 20).  That definition was unreasonable and too expansive, the D.C. Circuit held, because the definition of an autodialer would then capture smartphones,

devices which almost 80% of American adults owned in 2016. *Id.* at 697–700 (citations omitted). Because Congress did not intend for the definition of an autodialer to have such a wide reach, the *ACA International* court vacated the Commission's definition of the capacity of an autodialer.

The D.C. Circuit also set aside the Commission's rulings regarding the functions an autodialer must be able to perform, namely its interpretation of whether a device needed to be able to generate and call random or sequential numbers to constitute an ATDS. *See* 47 U.S.C. § 227(a)(1). The court reasoned that "[w]hile the 2015 ruling indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer, it also suggests a competing view: that equipment can meet the statutory definition even if it lacks that capacity." *ACA Int'l*, 885 F.3d at 702. Therefore, the court vacated the Commission's definition of the functions necessary for a device to constitute an autodialer.

Turning to Keyes's reading of *ACA International*, she first argues that *ACA International* has no impact on 2003, 2008, and 2012 advice from the Commission regarding the capacity and functions of an ATDS discussed in FCC Orders because that advice was not timely challenged. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, (2003); *see also In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 23 FCC Rcd. 559 (2008); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15932 n.5 (2012) [hereinafter "2012 Order"]. She then contends that *ACA International* is not binding on this Court.

Both of these arguments are unavailing. First, Keyes's timeliness argument is unconvincing because the D.C. Circuit Court of Appeals explicitly rejected it in *ACA International*. The court determined that "[w]hile the Commission's [2015] ruling purports to reaffirm the prior orders, that does not shield the agency's pertinent pronouncements from review. The agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform." 885 F.3d at 701. "Petitioners covered their bases," the court added, "by filing petitions for both a declaratory ruling and a rulemaking concerning that issue and related ones." *Id.* Indeed, courts applying *ACA International* have noted that the pre-2015 guidance, to the extent it was reaffirmed in the 2015 Declaratory Ruling, no longer warrants judicial deference. *See, e.g.*, *Marshall*, 2018 WL 1567852, at *10–12 (noting that "[p]laintiff cannot rely on the FCC's definition of an ATDS to the extent it includes systems that cannot be programmed to dial random or sequential numbers, as is the case with some predictive dialers.").

Second, *ACA International* is binding on this Court in so far as it vacated the Commission's interpretations regarding the capacity and functions of an autodialer.

That is, because of *ACA International*, this Court need not defer to the Commission's understanding of the capacity and functions of an autodialer.[4]  Indeed, "[o]nce the Multidistrict Litigation Panel assigned petitions challenging the [2015 Declaratory Ruling] to the D.C. Circuit, that court became 'the sole forum for addressing . . . the validity of the FCC's rule[ ].' "  *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017) (third alteration in original) (quoting *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)).  "And consequently, its decision striking down the [2015 Declaratory Ruling] became 'binding outside of the [D.C. Circuit].' "  *Id.* (second alteration in original) (quoting *Peck*, 535 F.3d at 1057).  This approach bears out the Hobbs Act, which grants federal appellate courts (except for the Federal Circuit) "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47[.]"  28 U.S.C. § 2342(1).  Thus, to resolve the pending partial summary judgment motions, the Court need not defer to the Commission's declarations regarding the capacity and functions of an ATDS.

---

[4]  To be sure, the Court is not bound by any interpretation of the TCPA adopted by the D.C. Circuit after it invalidated the Commission's declarations.  *See, e.g.*, *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477 (2d Cir. 2018) (noting that the Second Circuit was not bound by the D.C. Circuit's reading of the TCPA following the latter court's set-aside of the 2015 Declaratory Ruling).

b)      Merits of Keyes's TCPA Claims

Turning now to the substance of Keyes's TCPA claims, the Court must reach back to the statutory language of an ATDS.  *See also King*, 894 F.3d at 477 (observing that the *ACA International* court "invalidated [the 2015 Declaratory Ruling] and thereby removed any deference we might owe to the views the FCC expressed in it").  The Act provides that an ATDS must "ha[ve] the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

(1)      Capacity of the Aspect System

As to the capacity a device must have to constitute an ATDS, the Second and Third Circuits have concluded that the statutory language mandates the following examination:  "how much is required to enable the device to function as an autodialer: does it require the simple flipping of a switch, or does it require essentially a top-to-bottom reconstruction of the equipment?"  *ACA Int'l*, 885 F.3d at 696; *see King*, 894 F.3d at 478–79; *see also Dominguez*, 894 F.3d at 120 & n.3. The former would constitute an ATDS, whereas the latter would not.  The Court finds these courts' approach and reasoning persuasive.

Here, Ocwen has demonstrated as a matter of law that the Aspect System which it used to call Keyes requires more than a flip of the switch to qualify as an

autodialer. Indeed, to modify the Aspect System, Ocwen would need to alter the system's source code, and it does not have access to that code.

This case is therefore similar to *Herrick v. GoDaddy.com LLC*, --- F. Supp. 3d ----, 2018 WL 2229131 (D. Ariz. May 14, 2018). There, the court concluded that "simply press[ing] a button" would not enable the device to have the functions of an ATDS. *Id.* at *8 (citing *ACA Int'l*, 885 F.3d at 695). The *Herrick* court reached this conclusion because of testimony from the CEO of the company which produced the relevant device. Specifically, the CEO testified that he would need to approve the defendant's modification of the device. *Id.* The same is true here; Ocwen does not own the source code and therefore would need external approval to effect the necessary modification.

What is more, Keyes's counter-argument only confirms this conclusion. The Aspect System operates on Linus and Windows, and that fact is the sole basis for her claim that the system has the capacity to function as an ATDS. Dkt. No. 80, p. 26 (Pg. ID 4967). But, the logical extension of Keyes's assertion is that every device operating on Linus or Windows has the capacity to be an autodialer. This far-reaching contention is nearly identical to the key corollary rejected in *ACA International*: that the Commission's definition of "present capacity" was unlawful because it would capture smartphones that, through simply downloading an app, would gain the necessary functions of an ATDS. *See Dominguez*, 894 F.3d at 120

& n.3.  Accordingly, all reasonable persons would conclude that the Aspect System does not have the capacity to function as an ATDS.  Ocwen is therefore entitled to succeed on its partial summary judgment motion.

(2)    Functions of the Aspect System

Ocwen will prevail here on yet another basis:  the Aspect System does not possess the functions necessary to be an ATDS.  The Aspect System dials from a set list, but that is not the same as dialing numbers using a random or sequential number generator.  And FCC advice was unclear as to whether generating random or sequential numbers and dialing them was a necessary function of an ATDS.  *See ACA Int'l*, 885 F.3d at 702–03.  The D.C. Circuit explained:

> [s]o which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? . . . It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.[5]

*Id.*

---

[5] Relying on *Reyes v. BCA Fin. Servs., Inc.*, Keyes contends that *ACA International* does not affect FCC guidance from 2003 determining that predictive dialers are ATDSs regardless of whether they can generate and dial random or sequential numbers.  --- F. Supp. 3d ----, 2018 WL 2220417, at *11–12 (S.D. Fla. May 14, 2018).  This Court, as informed by the preceding quote in *ACA International* and the plain statutory language, will reach a different result.  *See also Sessions v. Barclays Bank Del.*, --- F. Supp. 3d ----, 2018 WL 3134439, at *4 (N.D. Ga. June 25, 2018) ("Contrary to the pronouncement of the *Reyes* court, the D.C. Circuit clearly held that it invalidated *all* of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS.").

The better reading of the Act, this Court will conclude, is that devices must be able to generate random or sequential numbers to be dialed to qualify as an ATDS. This approach tracks the statutory language.

All agree that the Aspect System dials numbers from a set list. The parties further agree that the system does not produce or store numbers using a random or sequential number generator, and call those numbers. *See* Dkt. No. 80, pp. 5, 24 (Pg. ID 4946, 4965); *see also* Dkt. No. 56, p. 20 (Pg. ID 1044). And, as described above, Ocwen does not have the capacity to effect this change in the Aspect System. Thus, the Aspect System—as Keyes has described it—is not an ATDS because it lacks the necessary functionality.

Finally, Keyes vigorously maintains that the Aspect System has the required functions of an ATDS and relies on *Espejo v. Santander Consumer USA, Inc.*, Case Nos. 11 C 8987, 12 C 9431, 2016 WL 6037625 (M.D. Pa. Oct. 14, 2016). That case is not instructive, however. The *Espejo* court evaluated an Aspect system, but Keyes offers no evidence that this is the same system which Ocwen used to call Keyes.

Second, although the *Espejo* court concluded that the Aspect system there was an ATDS, it did so applying the now-vacated FCC guidance. *Id.* at *4–5. Notably, it determined that the Aspect system in that case was an ATDS "regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *Id.* at *4 (internal quotation marks omitted) (emphasis omitted)

(quoting 2012 Order at 15932 n.5). *ACA International*, however, directly set aside that conclusion, noting that the Commission's conflicting guidance on that subject "falls short of reasoned decisionmaking in 'offer[ing] no meaningful guidance' to affected parties in material respects on whether their equipment is subject to the statute's autodialer restrictions." 885 F.3d at 701 (quoting *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 785 F.3d 740, 754 (D.C. Cir. 2015)).

And this Court has reasoned that a device must be able to call and generate numbers randomly or sequentially to qualify as an ATDS. Put another way, simply calling from a set list is not enough for equipment to constitute an autodialer. Accordingly, Keyes's reliance on *Espejo* is misplaced.

Based on the foregoing, the Aspect System is not an ATDS as a matter of law. Ocwen, then, will prevail on its motion for partial summary judgment. Because the Court concludes that no reasonable person could find that the Aspect System is an ATDS, Ocwen is entitled to summary judgment on Keyes's TCPA claims, Counts I and II.[6]

C.     MRCPA Claims

As Keyes's TCPA claims will not survive Ocwen's motion for partial summary judgment, no federal claims remain in this litigation. Consequently, the

---

[6] This holding means that there is no occasion for the Court to examine whether a genuine dispute of material fact exists regarding whether Keyes revoked consent under the TCPA.

Court will decline to exercise supplemental jurisdiction over the MRCPA claims.

*See* 28 U.S.C. § 1367(c)(3).

## V.  Conclusion

In this Opinion and Order, the Court was charged with resolving three motions.  First, Ocwen moved to exclude the expert report of Jeffrey Hansen.  Dkt. No. 54.  Second and third, both parties filed motions for partial summary judgment. Dkt. Nos. 52, 56.  In light of the foregoing, the Court will GRANT Ocwen's Motion to Exclude the Expert Report of Jeffrey Hansen [54].  The Court will also GRANT Ocwen's Motion for Partial Summary Judgment regarding the TCPA claims [56] and DENY Keyes's Motion for Partial Summary Judgment as to those claims [52]. Because the above holdings eliminate all the federal claims in this action, the Court will decline to exercise supplemental jurisdiction over the remaining state claims.

IT IS SO ORDERED.

Dated:  August 16, 2018                            /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 16, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk